NOT FOR PUBLICATION                    [Docket Nos. 67 & 68]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

```
————————————————————————  :
                          :
BP PRODUCTS NORTH AMERICA :
INC.,                     :
                          :
              Plaintiff,  :   Civil No. 06-0465 (RMB)
                          :
      v.                  :
                          :   **OPINION**
TOP SPEED GAS, LLC, et al., :
                          :
              Defendants. :
                          :
————————————————————————  :
```

Appearances:

Joseph A. Boyle
Lauri A. Mazzuchetti
Kelley Drye & Warren LLP
200 Kimball Drive
Parsippany, NJ 07054

Paul L. Kattas
Reppert Kelley
403 King George Road, Suite 201
Basking Ridge, NJ 07920
     Attorneys for Plaintiff

Chull S. Park
Hyun Suk Choi
The Park Law Group, LLC
23 South Warren Street, Second Floor
Trenton, NJ 08608
     Attorneys for Defendants

**BUMB**, United States District Judge:

     This matter comes before the Court upon a motion by the

defendants Top Speed Gas, LLC and Top Enterprise, LLC (the

1

"Defendants") to vacate the default judgment ordered by this
Court on January 4, 2008.  Defendants are corporate entities
controlled by co-defendant Mehmet Top that occupy two properties
on which gas stations are located.  Plaintiff BP Products North
America, Inc. (the "Plaintiff"), a corporate entity that sells
motor fuel and other petroleum products, opposes Defendants'
motion to vacate the default judgment on the grounds that
Defendants have no possibility of success on the merits, the
default resulted from Defendants' own culpable conduct, and
Plaintiff would be prejudiced if required to continue litigating
this matter.  Because the Court agrees that Defendants lack any
legitimate defense on the merits, it denies Defendants' motion to
vacate the default judgment.

## I. Statement of Facts

Co-defendant Mehmet Top operated two gas stations that are
the subject of this lawsuit, which were located, respectively, on
Kings Highway in Cherry Hill, New Jersey (the "Cherry Hill
Station") and on Route 130 in Brooklawn, New Jersey (the
"Brooklawn Station").  In one transaction, the terms of which
were set out in a sale agreement consummated in July 2001,
Defendants purchased the two properties from Plaintiff; they
purchased Plaintiff's interest in fee simple to the Cherry Hill
Station for $601,101, and Plaintiff's leasehold interest in the

2

Brooklawn Station for $250,000.[1]  The parties agreed that, as
consideration for these property transactions, Defendants would
sell only Plaintiff's brand of motor fuel and petroleum products
at these sites for a period of ten years.  This promise was
codified in the sale agreement, as well as in restrictive
covenants enumerated in the deed of sale for the Cherry Hill
Station and the lease assignment agreement for the Brooklawn
Station.  Plaintiff subsequently entered into five-year-term
gasoline supply agreements with Top Speed for the Cherry Hill
Station in October 2001, and with Top Enterprise for the
Brooklawn Station in November 2001.

Around October 2005, as a result of a steep increase in
gasoline prices attributable to the devastation wrought by
Hurricanes Katrina and Rita, Top Enterprise stopped payments to
Plaintiff for $60,000 of fuel it had already purchased.  At that
time, Top Speed and Top Enterprise refused to purchase any
additional fuel from Plaintiff.  Plaintiff sent Defendants notice
of their failure to comply with the supply agreements and the
restrictive covenants, and offered an opportunity to cure the
defaults.  Plaintiff subsequently terminated Defendants'
respective supply agreements and removed its trademarks and logos

---

[1] The sale agreement was later amended to specify that Top
Enterprise, LLC would lease the Brooklawn Station and Top Speed
Gas, LLC would purchase the Cherry Hill Station.  Mr. Top
controlled both entities.

from the two stations.  Plaintiff alleges, and this Court
previously found as fact, that around late December 2005 or early
January 2006, Defendants began selling gasoline from another
supplier at the Cherry Hill Station.[2]

Plaintiff filed this lawsuit on February 1, 2006 and this
Court issued an order on February 23, 2006 temporarily
restraining Defendants from selling non-BP gasoline at the Cherry
Hill Station.  In May 2007, the Court granted the motion of
Defendants' counsel to withdraw from the case, which was the
apparent result of Mr. Top's dissatisfaction with the attorney's
representation and his accompanying refusal to pay the attorney's
fees.  [Docket No. 30.]  When the Court granted this motion, it
warned Defendants that a new attorney must enter an appearance
before July 2, 2007 or default would be entered against them.
Since no substituting attorney had entered an appearance, on July
27, 2007, the Court ordered Mr. Top to appear <u>pro</u> <u>se</u> at the next
status conference, to be held on September 7, 2007, which he did.
On several occasions [e.g., Docket Nos. 35, 38], the Court
informed Mr. Top that Top Speed Gas, LLC, and Top Enterprise,

---

[2] Defendants' statement that "Top Speed never sold non-BP
products at the Cherry Hill Premises" (Def. Br. at 8) is curious,
since Defendant admitted to this Court in a previous proceeding
that he "had no other option than to begin selling unbranded
gasoline [at the Cherry Hill Station].  It was a matter of
financial survival."  <u>BP Products North America, Inc. v. Top
Speed Gas, LLC</u>, slip op., Civ. No. 06-465 (D.N.J. Feb. 23. 2006)
(TRO Opinion).

LLC, as corporate entities, had to obtain counsel under pain of
default, since they could not be represented by Mr. Top acting
pro se.  As no counsel had entered an appearance by November 28,
2007, the Court ordered the Clerk to enter default against the
two corporate Defendants on that date.  [Docket No. 39.]
Plaintiff subsequently moved for a default judgment against Top
Speed Gas, LLC and Top Enterprise, LLC [Docket No. 41], which the
Court granted on January 4, 2008. [Docket Nos. 42 and 43.]

On March 31, 2008, Plaintiff moved for summary judgment on
the remaining claims, in particular the claims against Mr. Top
and all counterclaims.  That same date -- 10 months after the
Court granted the motion of Defendants' attorney to withdraw and
almost three months after the entry of default judgment -- the
Court received notice that Defendants had retained new
representation.  Defense counsel timely filed a brief responding
to Plaintiff's motion for summary judgment on May 5, 2008.  More
than a month later, on June 16, 2008 -- nearly six months after
the entry of default and nearly three months after the new
counsel had been retained -- Defendants filed this motion to
vacate the default judgment pursuant to Federal Rule of Civil
Procedure 60(b).  The Court heard argument on the summary
judgment motion on June 20, 2008, and denied the motion without
prejudice in light of the pending motion to vacate the default
judgment.  The Court addresses that motion herein.

5

## II. Legal Standard

Federal Rule of Civil Procedure 60(b) permits parties to petition federal courts for relief from final judgments.  When deciding whether to set aside a default judgment in particular, district courts are guided by a three-part test.  They must consider: (1) whether the plaintiff will be prejudiced if the default judgment is set aside; (2) whether the defendant has a meritorious defense; and (3) whether the default was the product of the defendant's culpable conduct.  Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 73 (3d Cir. 1987).

Although district courts are urged to make explicit findings concerning these factors in considering a motion to vacate a default judgment, id., the second factor -- whether the defendant has a meritorious defense -- is a "threshold question," since "there would be no point in setting aside the default judgment and remanding for a . . . hearing [on the merits] if [the moving party] could not demonstrate the possibility of his winning." U.S. v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984).  The showing of a meritorious defense is accomplished when "allegations of defendant's answer, if established on trial, would constitute a complete defense to the action." Tozer v. Charles A. Krause Milling Co., 189 F.2d 242, 244 (3d Cir. 1951).

Decisions to set aside default judgments are left to the discretion of the district court, but doubtful cases should be

6

resolved in favor of the party moving to set aside the default judgment so that cases, when possible, may be decided on their merits.  $55,518.05, 728 F.2d at 194-95.

## III. Discussion

### A. Meritorious Defense

The Court first considers the "threshold question" of whether Defendants have a meritorious defense, which would, if established on trial, constitute a complete defense to the action.  $55,518.05, 728 F.2d at 195.

As a preliminary matter, the Court notes that Defendants' moving brief does not even argue the existence of a meritorious defense as to the failure of Top Enterprise to make payments on purchased gasoline.[3]  The Court therefore understands Defendants' submission as arguing only that there exist meritorious defenses to the alleged breach of contractual duties contained in the deed of sale for the Cherry Hill Station and the lease assignment

_____

[3] In their Reply Brief, Defendants make a perfunctory attempt at preserving the applicability of their motion to this monetary issue by reciting a few conclusory sentences (only after Plaintiff's Opposition Brief noted the absence of argumentation on these issues). (Def. Resp. Br. at 12.)  The Court is not persuaded by this superficial effort.  However, to the extent Defendant seeks to challenge the Court's calculation of attorney's fees awarded in the judgment, the Court leaves open the possibility that Defendants may, pursuant to Rule 60, move to modify the fee award contained in the judgment.  See, e.g., Weitzman v. Stein, 908 F. Supp. 187 (S.D.N.Y. 1995).

agreement for the Brooklawn Station.  Since the existence of a
meritorious defense is a "threshold question" when considering a
motion to vacate a default judgment, the Court will, without
further discussion, deny Defendants' motion as to the monetary
portion of the default judgment.

Defendants argue that the default judgment should be vacated
because there exist meritorious defenses to the alleged breach of
the restrictive covenants contained in the deed of sale for the
Cherry Hill Station and the lease assignment agreement for the
Brooklawn Station.  The Court will address each in turn.


## 1. Cherry Hill Station

Defendants do not dispute that they agreed to sell only
Plaintiff's brand of petroleum products when they assented to a
restrictive covenant contained in deed of sale.  Defendants
argue, however, that the restrictive covenant is now
unenforceable, since the covenant's terms are unreasonable.

Restrictive covenants to refrain from competitive practices
are enforceable, if reasonable.  3 Milton R. Friedman, Friedman
on Leases § 28:1 (Patrick A. Randolph, Jr., 5th ed., 2008); see
also Davidson Bros., Inc. v. D. Katz & Sons, Inc., 121 N.J. 196,
579 A.2d 288 (1990).  "Covenants against competition that are
tied to ownership of a particular parcel of land are seldom
unreasonable because the impact is limited to one piece of land."
Restatement (Third) of Property § 3.6 cmt. b.  To determine

whether a particular restrictive covenant is reasonable, the
Supreme Court of New Jersey has set out an eight-factor test.
Courts should consider: (1) whether the parties intended to
interfere with existing commercial laws, (2) whether the
covenant's value made the exchange of considerations inequitable,
(3) whether the covenant clearly expresses its restrictions, (4)
whether the covenant was in writing and whether the burdened
party had actual notice of it, (5) whether the covenant is
reasonable concerning area, time, or duration (and does not
extend for perpetuity), (6) whether the covenant imposes an
unreasonable restraint on trade or secures a monopoly for the
covenantor, (7) whether the covenant interferes with the public
interest, and (8) whether changed circumstances now make the
covenant unreasonable.  Id. at 211.

    Defendants appear to concede that most of these factors
weigh in favor of a determination that the restrictive covenant
at issue here is reasonable.  Defendants argue only that the
covenant violates federal anti-trust laws and is unreasonable
because it does not run with the land.[4]

    Even if, arguendo, the Court did hold the restrictive

---

[4] Defendants also remark that "the Court must decide"
whether the exchange of considerations was equitable.  [Def. Mot.
Br. at 31.]  Defendants offer no reasons why the Court might
determine the exchange of considerations to be unreasonable,
however.  Based on the information before it, the Court has no
reason to doubt the fairness of the exchange of considerations
for which Defendants and Plaintiff bargained.

covenant to belie the policies of federal anti-trust law, it
doubts that this factor alone would outweigh the other seven.
Nonetheless, the Court does not find the restrictive covenant to
violate anti-trust policies.  If Defendants' argument were
correct, then <u>any</u> covenant requiring that a property be used to
sell none other than a particular brand would violate anti-trust
law.  This logical consequence of Defendants' argument is
inconsistent with established law.  <u>See</u> Restatement (Third) of
Property § 3.6 cmt. c ("Tying arrangements, which require the
purchase of a second product or service as a condition of
purchasing the first, . . . [have] c[o]me to be widely
accepted.") (addressing petroleum product sales in particular);
<u>Trosper v. Shoemaker</u>, 227 S.W.2d 176 (Ky. 1949) (upholding a
petroleum product tying arrangement); <u>Staebler-Kempf Oil Co. v.
Mac's Auto Mart, Inc.</u>, 45 N.W.2d 316 (Mich. 1951) (upholding a
petroleum product tying arrangement); <u>see generally</u> <u>Acme Markets,
Inc. v. Wharton Hardware and Supply Corp.</u>, 890 F.Supp. 1230, 1242
(D.N.J. 1995) ("[New Jersey courts] recognize that it is not
unreasonable for parties in commercial-property transactions to
protect themselves from competition by executing noncompetition
covenants. . . . [R]ather than limiting trade, in some instances,
restrictive covenants may increase business activity.").[5]

_____

     [5] The Court need not reach the question of whether the
restrictive covenant is a "tying arrangement."  Plaintiff argues
that it is not, because Defendants are not required to sell
Plaintiff's brand of gasoline; they are only barred from selling

Defendants' other argument, that the restrictive covenant is unreasonable because it does not "touch and concern" the land, is equally unavailing.  The Supreme Court of New Jersey has departed from this "esoteric" test.  <u>Davidson</u>, 579 A.2d at 295 ("Rigid adherence to the 'touch and concern' test as a means of determining the enforceability of a restrictive covenant is not warranted.  Reasonableness, not esoteric concepts of property law, should be the guiding inquiry into the validity of covenants at law.").  Defendants have not articulated why the "touch and concern" analysis is relevant to the reasonableness of the particular restrictive covenant at issue here.  As such, the Court finds that further discussion is unnecessary, because a determination that the restrictive covenant does not "touch and concern" the land would not alter its conclusion on the covenant's reasonableness.

The Court therefore concludes that, applying the eight <u>Davidson</u> factors, the restrictive covenant limiting sales to Plaintiff's brand petroleum products for a ten-year term is reasonable.  For this reason, there exists no meritorious defense to Defendants' breach of the covenant's terms at the Cherry Hill Station.

---

other brands of gasoline.  (Defendants could, in compliance with the covenant, operate another sort of business altogether on the properties.)  (Pl. Op. Br. at 28.)  The Court merely holds that the restrictive covenant, whether or not a tying arrangement, is well within the range of permissible covenants.

11

### 2. Brooklawn Station

Also here, Defendants do not dispute that they agreed to sell only Plaintiff's brand of petroleum products when they assented to a restrictive covenant contained in the lease assignment agreement for the Brooklawn Station.  They argue, however, that Plaintiff cannot enforce the restrictive covenant, since Plaintiff does not retain any reversionary interest in the Brooklawn Station property.

Defendants assert that restrictive covenants are never enforceable by assignors when contained within a contract to completely assign a leasehold interest, since the assignor does not retain any reversionary interest in the property under these circumstances.  This proposition of law is patently incorrect. In fact, Courts frequently enforce these sorts of restrictive covenants.  See, e.g., BP Products North America v. Motor Parkway Amoco, et al., slip op., Civ. No. 06-0833 (E.D.N.Y. Aug. 21, 2006); Al-Madinah Petroleum, Inc. v. Manjee, 521 S.E.2d 681 (Ga. App. 1999).

Defendants' premise is correct that there is no privity of estate between an assignor and an assignee, and thus the assignor retains no possessory interest in the property.  1 Milton R. Friedman, Friedman on Leases § 7:5.3 (Patrick A. Randolph, Jr.,

12

5th ed., 2008).  Nonetheless, there is privity of contract
between assignor and assignee.  For this reason, the tenant-
assignor may assign its leasehold interest for "substantial
consideration," and may enforce the assignment contract at law
for damages (although it may not repossess the premises).  <u>Id.</u>
In this case, Plaintiff assigned its leasehold interest in the
Brooklawn Station in exchange for the consideration that
Defendants would sell only Plaintiff's brand of petroleum
products.  Although Plaintiff could not, if it wanted to, enforce
this agreement by evicting Defendants from the premises, it may
seek damages for breach of contract.[6]

The cases cited by Defendants in support of their position
are inapposite.  In <u>Groth v. Continental Oil Co.</u>, 373 P.2d 548
(Id. 1962) and in <u>Berkeley Development Co. v. Great Atlantic &
Pacific Tea Co.</u>, 214 N.J. Super. 227, 518 A.2d 790 (1986), the
two primary cases on which Defendants rely, the restrictive
covenants at issue were in the original leases and the disputes
were over whether the assignee was subject to the restriction to
which the assignor had assented.  Here, by contrast, the

_____

[6] If lease assignment contracts were not enforceable by
assignors, as Defendants argue, then assignors could never seek
indemnification for an assignee's non-payment of rent.  As is
well established, if an assignee fails to pay rent, the assignor
remains liable to the landlord; however, because the assignor and
assignee are in privity of contract, the assignor can seek
indemnification from the assignee.  <u>Friedman</u>, <u>supra</u>, at § 7:5.1.
This illustrates that Defendants' premise -- that an assignor has
no enforceable rights under the assignment contract -- is clearly
incorrect.

13

restriction is contained in an instrument the assignor and
assignee both assented to -- the assignment contract -- and not
in some preexisting instrument.  None of the cases cited by
Defendants hold that a restrictive covenant contained within a
lease assignment contract is unenforceable by the assignor.

Thus, because the restrictive covenant in the lease
assignment contract is not unenforceable, and is reasonable for
the same reasons articulated as to the Cherry Hill Station, the
Court finds that the defenses asserted by Defendants as to the
Brooklawn Station lack merit.

### B. Prejudice and Culpability

Because the matter of whether Defendants have a meritorious
defense is a "threshold question," the Court need not reach the
other two factors, namely whether Plaintiff will be prejudiced if
the judgment is set aside and whether the default was the product
of Defendants' own culpable conduct, in ruling on a motion to
vacate a default judgment.  U.S. v. $55,518.05 in U.S. Currency,
728 F.2d 192, 195 (3d Cir. 1984).  Nonetheless, the Third Circuit
has urged district courts to make explicit findings concerning
these factors when considering a motion to vacate a default
judgment.  Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 73 (3d Cir.
1987).

First, the Court finds that Plaintiff would be minimally
prejudiced if the judgment was set aside.  Contrary to

Plaintiff's submission, "[d]elay in realizing satisfaction on a claim rarely serves to establish [a sufficient] degree of prejudice." <u>Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.</u>, 175 Fed. Appx. 519, 523 (3d Cir. 2006) (quoting <u>Feliciano v. Reliant Tooling Co.</u>, 691 F.2d 653, 656-57 (3d Cir. 1982)). Nonetheless, the substantive legal questions discussed in Part A of this OPINION were ripe for litigation more than a year ago. The Court agrees with Plaintiff that requiring it to litigate this case from "ground zero" would work an unfairness upon it. (Pl. Op. Br. at 33-34.) The Court is mindful, however, that the usual indicia of serious prejudice are absent here, such as a hindered ability to pursue the claim, loss of evidence, increased potential for fraud or collusion, or substantial reliance upon the judgment." <u>Id.</u> at 524.

Second, the Court finds that the default was the product of Defendants' own culpable conduct. Defendants portray Mr. Top as an innocent party who ran out of time while struggling to retain counsel and who did not understand the effect of a default judgment. In fact, the Court received the motion of Defendants' first attorney to withdraw from the case on February 15, 2007, almost a full year before the Court entered the default judgment on January 4, 2008. When the Court finally granted the attorney's motion on May 29, 2007, it explained that the "irretrievable breakdown of the attorney-client relationship" was caused by Mr. Top's dissatisfaction with his attorney's

15

representation and accompanying refusal to pay his attorney's fees.  [Docket No. 30.]  Although one might expect that Mr. Top would already have sought replacement representation by this date, the Court ordered Defendants to secure new representation, on pain of default, by July 2, 2007.  In numerous subsequent communications with Mr. Top, the Court explained that default would result if the corporate defendants were not represented by counsel.  Magistrate Judge Schneider explained to Mr. Top the effect of a default judgment at the status conference held on September 7, 2007 (Mr. Top was accompanied by his daughter, who spoke on his behalf):

> JUDGE SCHNEIDER: Under the rules of the Court, a corporation cannot represent itself.  So unless Top Speed Gas LLC and Top Enterprise LLC get attorneys to represent them, a default is going to be entered against them.
> MS. TOP: What is a default?
> JUDGE SCHNEIDER: A default means that a judgment will automatically be entered in favor of the Plaintiff.
> MS. TOP: OK, so that means that we cannot represent ourselves and we need to get a lawyer?
> JUDGE SCHNEIDER: Mr. Top can represent himself.  He is a defendant in this case.
> MS. TOP: Oh, so there are three defendants?
> JUDGE SCHNEIDER: Yes.  There are three defendants: the two companies and Mr. Top.  Mr. Top, your dad, can represent himself, but he cannot represent the two companies.
> MS. TOP: OK.
> JUDGE SCHNEIDER: Unless the two companies get a lawyer, a default is going to be entered against them and that means that they don't have a defense to any of the claims.

[Docket No. 35 (audio recording).]  Mr. Top communicated with the Court directly and through his daughter during the proceedings.

If he did not understand before September 7, 2007, he should have understood thereafter that default would result if the two corporate defendants continued to be unrepresented.

The Clerk entered default on November 28, 2007 and the Court granted Plaintiff's motion for default judgment on January 4, 2008.  Defendants did not retain new counsel until March 31, 2008, and Defendants' new attorney waited nearly three months after that, until June 16, 2008, before filing the motion to vacate the default judgment.

Based on the numerous warnings received by Mr. Top and his persistent refusal to retain an attorney, the Court finds that Defendants willfully and in bad faith ignored the Court's repeated entreaties to retain counsel.


**IV. Conclusion**

For the aforementioned reasons, Defendants' motion to vacate the default judgment is denied.  An appropriate Order will issue this date.


Dated:   October 23, 2008            s/Renée Marie Bumb
                                     RENÉE MARIE BUMB
                                     UNITED STATES DISTRICT JUDGE